## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IDALIS MARCANO DELANEY<br><br>Plaintiff<br><br>vs.<br><br>SAN JORGE CHILDREN'S HOSPITAL, INC., or alternatively, JOHN DOE CORPORATION d/b/a SAN JORGE CHILDREN'S HOSPITAL; JOHN DOES 1, 2 and 3; CORPORATIONS A, B and C; UNKNOWN INSURANCE COMPANIES A through D<br><br>Defendants | CIVIL NO.: 15-<br><br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

## COMPLAINT

**TO THE HONORABLE COURT:**

Plaintiff Idalis Marcano Delaney through her undersigned counsel, very respectfully states and prays as follows:

### Jurisdiction, Venue and Parties

1.      The events or omissions giving rise to the claims set forth in this action all occurred within the District of Puerto Rico and the Commonwealth of Puerto Rico.

2.      Federal jurisdiction in this case is attained under diversity pursuant to section 1332 of Title 28, United States Code.  Venue is appropriate in this judicial district pursuant to section 1391(b) of Title 28, United States Code.

3.      The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

4.      Idalis Marcano Delaney is a citizen and resident of the state of Massachusetts.

5.      Defendant San Jorge Children's Hospital, Inc., or alternatively, John Doe Corporation d/b/a San Jorge Children's Hospital (hereinafter "Hospital San Jorge") is a corporation organized under the laws of the Commonwealth which has its principal place of business in Puerto Rico.  Hospital San Jorge is the owner and/or operator of a medical facility of the same name located in San Juan, Puerto Rico.

6.      All of the other defendants are citizens and residents of the Commonwealth of Puerto Rico or states other than Massachusetts. John Does 1, 2 and 3 and Corporations A, B and C are persons and/or corporations, whose identities are presently unknown, which by their negligent acts or omissions caused or contributed to the damages claimed herein.

7.      Unknown Insurance Companies A through D, insurers whose identities are presently unknown, insured the aforementioned defendants and are jointly responsible with their respective insureds for the damages claimed herein pursuant to section 2003 of Title 26 of the Annotated Laws of Puerto Rico.

**Factual Allegations**

8.      On October 7, 2014 at or around 7:02 a.m. plaintiff Idalis Marcano Delaney took her minor son Alex Yidiel Canales Marcano to the Emergency Room of Hospital San Jorge.

9.      Alex Yidiel was 3 ½ months of age and had a history of a two day upper respiratory infection.  He had been seen by his pediatrician who prescribed Albuterol nebulizer treatment every six hours plus Suprex.  His condition worsened and Alex developed the following symptoms: cough, decreased appetite, vomiting and a temperature of 37.7.

2

10.     According to the medical record he was seen by the Emergency Room's ("ER") secretary at 7:02 a.m., seen in triage at 7:49 a.m. and seen by the ER physician at 9:15 a.m.  He was described as follows:  alert, tachypneic, temperature 37.8, blood pressure 98/46, mild pharyngeal hyperemia, both inspiratory and expiratory wheezes and occasional rhonchi bilaterally.  Also the presence of subcostal, intercostal and suprasternal retractions were noted.

11.     According to the medical record, nasal washings were positive to respiratory syncytial virus and negative for influenza A and B, complete blood count = white blood cells 11.1 K, hemoglobin 11.3, hematocrit 35, platelets 444K with 37.30 neutrophils, 50.20 lymphocytes, 12.10 monocytes.

12.     The Emergency Room doctor made the following diagnosis:  respiratory distress due to respiratory syncytial virus and bronchiolitis.  According to the medical record the following treatment was ordered: Atrovent inhaler (STAT) and then every 4 hours, Albuterol inhaler every 30 minutes three doses, afterwards every six hours, intravenous fluids, Solumedrol IV/Pepcid 4 mg IV stat.

13.     Baby Alex was admitted to the San Jorge Children's Hospital after he failed to show improvement following continuous Albuterol for two hours.  He was transferred to the Pediatric Intensive Care Unit (PICU).

14.     At PICU Alex continued receiving Albuterol infusions (4ml in 234 ml NSS). On October 8, 2014 at 6:00 a.m. he was placed on nasal BiPap for his moderate respiratory distress.  According to the medical record there was no cyanosis or edema and his oxygen saturation was 100%.  He was described as afebrile and was not receiving antibiotics.

15.   A chest x-ray taken in the Emergency Room showed hyperaeration with diaphragms at 9-10 ICS.  His C Reactive Protein was 0.44, not indicative of infection.

16.   Subsequently his $O_2$ saturation was 95% in room air.   Nasal flaring, wheezing and retractions continued and he was irritable.  His respiratory rate was 70, heart rate 186 and $O_2$ saturation 100% at 9:00 p.m.

17.   Laboratory results performed on October 8, 2014 showed the following results for arterial blood gases (ABG): R-radial (13.38), PH 7.295, pC02 60.7, $pO_2$ 116.9, bicarb 28.7, BE 0.8, $O_2$ sat 98%.  This was the first ABG test done since admission and showed inadequate ventilation and respiratory acidosis.  A chest x-ray performed on October 8 did not show any significant changes from the one performed the day before.

18.   On October 9, 2014 a chest x-ray showed B/L air trapping, persistent findings of bronchiolitis with new findings of Left Upper Lobe and Left Lower Lobe pneumonia/atelectasis.  An echocardiogram was done by Dr. Edwin Rodríguez Cruz which showed normal anatomy, normal function and small pericardial effusion.

19.   According to the notes Baby Alex's nasogastric feeds of Good Start Soothie were discontinued and he was ordered nothing by mouth due to his ongoing/worsening respiratory distress.   He continued to receive Albuterol by continuous intravenous infusion.   He was also receiving Claforan for suspected pneumonia and every 8 hours Solumedrol plus Zantac and morphine.

20.   The pediatrician assigned by San Jorge Children's Hospital ordered the BiPap to be discontinued because of lack of improvement and Baby Alex was returned to the RAM cannula with P-SIMV parameters for non-invasive ventilation.  According to

4

the medical record he was not intubated because there was a "high risk of turning worse if intubated because more difficult to watch $CO_2$".

21.     The above order fell below the standard of care since a peripheral arterial line was indicated for blood gas monitoring which was not implemented, nor was Alex given total parenteral nutrition which was indicated once the physician ordered NPO. He had marked tachypnea (76) and retractions.

22.     On October 10, 2014 Baby Alex continued to have severe respiratory distress, which was not improving and was, in fact, worsening.  His ventilation settings were increased to IPAP 20, EPAP 6.  He was tachycardic (179-182).  A chest x-ray done at 8:42 a.m. showed mild air trapping; confluent perihilar opacities suggesting atelectatic, inflammatory and interstitial changes; sub lobar opacities in upper lungs, right middle lobe and lingula, concerning for pneumonic process.  He continued to receive mechanical ventilation via nasal prongs (RAM cannula).

23.     A follow up chest x-ray done at 7:33 p.m. showed a worsening condition with advancing bronchiolitis and pneumomediastinum (bilateral) and B/L air trapping, B/L central peribronchial wall thickening and prominent interstitial markings.  According to the medical records Alex had respiratory failure.

24.     In accordance with the standard of care the presence of air leaks (B/L pneumomediastinum) and severe respiratory distress were indications to change to high frequency oscillator ventilation and to transfer Baby Alex to a higher level of care that could provide, in addition to a peripheral arterial line, total parenteral nutrition and treatment for a probable hospital acquired pneumonia.

25.     On October 10, 2014 at or around 7:00 a.m. he was hypertensive (BP 135/92) and Hydralazine was given at 12:35 a.m. on October 11, 2009.  No etiology for the hypertension was pursued.

26.     On October 11, 2014 a Versed drip was started at 12:50 a.m. to facilitate intubation, since according to the medical record Alex had developed bradycardia and desaturations, leading to the plan for an endotracheal tube.  Furthermore, a chest x-ray showed the pneumomediastinum B/L pneumothoraces and subcutaneous emphysema in Baby Alex's neck.

27.     At 2:20 a.m. he was suctioned for purulent secretions from his ETT, nose and mouth.  According to the standards of care a culture gram stain of these secretions was indicated but not performed, a clear violation of said standards.

28.     An arterial blood gas (R-radial) done at 3:50 a.m. was markedly abnormal with severe respiratory acidosis with pH 6.93, pCO2 179.8, pC2 147, bicarb 37.1, BE-1.1 and $O_2$ sat 96.6%.  A chest x-ray showed that the nasogastric tube was in the distal esophagus.

29.     Plaintiff had observed formula coming out of her son's nose, raising the issue of aspiration with secondary infection from Staph or another bacteria.   In accordance with the standards of medical care a stat gram stain of the purulent secretions had to be ordered to obtain important information, especially regarding the need for Vancomycin.   Furthermore, despite chest X-rays that repeatedly showed pneumonia, no tracheal aspirate was obtained prior to intubation, which is another deviation from the standard of care.   Severe hypertension continued despite Hydralazine.

30.    The medical record shows that at 4:10 a.m. his vent settings were 25/10, IMV 48, $O_2$ 90% with flow 40, IT= 0.45.  This is excessive PEEP which can impair cardiac venous return.  The PIP was further decreased to 23 and PEEP lowered to 9 and flow increased to 13.

31.    According to the medical records on October 11 at 4:45 p.m. the neck emphysema and pneumomediastinum were resolving and there were no pneumothoraxes. The lungs remained hyperaerated.  He was connected to the ventilator in 90% $O_2$ with PIP 28, RR=45 and iT= 0.45.

32.    Exposing Baby Alex to such high pressures/peep in the face of air leaks increased the risk of further air leaks.  The continuous use of 100% oxygen when paO2 levels were high increased the risk of oxygen damage to the lungs.  Hence, these two actions were in clear violation of the standard of care.

33.    An Echocardiogram performed at 8:11 a.m. showed elevated right sided pressures and evidence for persistent pulmonary hypertension due to lung disease (PPH).  Vancomycin was started and a trough level was done at 9:20 a.m.  He was also on Versed and Fentanyl drips as well as Narcan for respiratory paralysis.

34.    At 4:00 p.m. the positive end-expiratory pressure (PEEP) was decreased to 8, the flow was 15 and the oxygen was 60%.  According to the medical record, at or around 7:23 p.m. his $O_2$ sat suddenly dropped from 99% to 80%.  Hand bagging was done but the $O_2$ sats dropped and he became bradycardic.

35.    Full cardiopulmonary resuscitation (CPR) with cardiac compressions were started and  multiple doses of epinephrine via his left internal jugular vein were given, however, Baby Alex failed to respond to said treatment. According to the medical record

bicarbonate was administered, since he was edematous and cyanotic, and an epi drip was started. However, the endotracheal tube was not removed and/or replaced to check for an obstructed tube.

36.     A full drip of 0.9 normal saline solution (100ml) was administered at 7:51 p.m. Dr. Vélez needled the right chest and air bubbles were noted when the IV tubing was placed in a glass of water. A Dopamine drip was started at 7:57 p.m. No chest tube was placed and no blood pressure could be obtained. Dr. Berríos, the intensivist, arrived at 8:05 p.m. and continued CPR.

37.     Baby Alex continued to be unresponsive and his pupils were fixed and dilated at 8:05 p.m. Desats and bradycardia continued. He was declared dead at 8:24 p.m. after 20 more minutes of CPR with no response, despite 5 rounds of epinephrine, atropine and bicarbonate.

38.     The death certificate listed the causes of death as:

a.      Bilateral bronchopneumonia by respiratory syncytial virus

b.      Hypercapnia with acidosis

c.      Respiratory failure

39.     San Jorge Children's Hospital's personnel were practicing below the standards of care in the treatment provided to Baby Alex Yidiel Canales and thereby caused his untimely death. Defendants' departures from the medical standards and/or professional negligence include, but are not limited to: failure to timely diagnose and properly treat Alex's pneumonia; failure to properly evaluate and treat his hypertension; his air leaks were largely ignored and a less traumatic form of ventilation was not given; failure to pursue Extracorporeal Membrane Oxygenation; failure to place a peripheral

8

arterial line; failure to properly monitor the ventilator settings; failure to perform a gram stain and culture; failure to administer Vancomycin and Gentamicin as soon as purulent material was noticed; failure to properly monitor Alex's nutritional needs; excessive administration of sodium; failure to perform a cranial imaging, renal ultrasound, or thyroid studies; failure to consult a nephrologist and an ophthalmologist; and failure to transfer Alex to another medical facility that could take care of his specific needs.

40.    Plaintiff Idalis Marcano Delaney has suffered severe emotional damages as a consequence of defendants' negligence and her baby son's death.   The life changing incident described above has taken a heavy toll on her.

41.    The untimely death of her baby boy and the consequential physical and emotional damages suffered by Mrs. Marcano were caused by defendants' negligent management of Baby Alex Yidiel Canales' medical care.   Defendants' departures from the medical standards of care and failure to act in a prudent reasonable or responsible manner in the medical care provided to Baby Alex in fact caused the traumatic outcome outlined above.

42.    Plaintiff Idalis Marcano Delaney has suffered and will continue to suffer grave emotional damages and mental anguish due to defendants' mismanagement of her son's medical care resulting in his death.   Said damages are valued at a sum in excess of $5,000,000.

## COUNT I

### (Medical Malpractice, Vicarious Liability – 31 L.P.R.A. §5141; 5142)

43.    Paragraphs 1 through 42 of this Complaint are incorporated by reference as if fully set forth herein.

44.     San Jorge Children's Hospital and the Doe Defendants had a duty to provide medical care to Alex Yidiel Canales Marcano that complied with the applicable standards of the medical profession.  Notwithstanding, San Jorge Children's Hospital and the Doe Defendants breached that duty as set forth above.

45.     San Jorge Children's Hospital is further vicariously liable for the negligent acts and/or omissions incurred by the other defendants herein that it employed, contracted with and/or granted privileges to, and by its medical and nursing staff that intervened with Alex Yidiel Canales Marcano, for its negligence in the selection, monitoring, supervision and granting of privileges to said doctors and nurses..

46.     There is a clear and direct causal link between San Jorge Children's Hospital and the Doe Defendants' medical malpractice and the damages sustained by plaintiff, as set forth above.

## COUNT II

## (Direct Action Against Insurers – 26 L.P.R.A. § 2003)

47.     Paragraphs 1 through 46 of this Complaint are incorporated by reference as if fully set forth herein.

48.     Defendants Insurance Companies A through D have a contractual obligation to compensate those who are damaged by the medical errors and omissions of San Jorge Children's Hospital and/or the Doe Defendants.  As set forth in Count I, above, those defendants committed medical malpractice with respect to baby Alex Yidiel Canales.  Moreover, there is a clear and direct causal link between said misconduct and the damages sustained by plaintiff, as set forth above.

49.     Under 26 L.P.R.A. §2003, plaintiff has a right to reclaim directly against the corresponding insurers of San Jorge Children's Hospital and the Doe Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests that the Court enter final judgment against defendants as follows:

1.     Finding defendants to be in violation of 31 L.P.R.A. § 5141, 5142 and 26 L.P.R.A. §2003, as alleged hereinabove.

2.     Finding defendants jointly and severally liable to plaintiff for the damages sustained by her, plus applicable interest and costs.

3.     Awarding plaintiff such other and further relief at law or in equity as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues triable of right by a jury in the complaint set forth above.

## RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 7th day of July, 2015.

s/David Efron
**DAVID EFRON**
USDC-PR 125701
**LAW OFFICES DAVID EFRON, PC**
*Attorneys for Plaintiff*
PO Box 29314
San Juan, PR 00929-0314
Tel. 787-753-6455
Fax 787-758-5515
E-mail: efron@davidefronlaw.com

11